# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JASON KOKINDA, | ) |
| | ) Civil Action No. 2: 15-cv-1593 |
| Plaintiff, | ) |
| | ) United States District Judge |
| | ) Mark R. Hornak |
| v. | ) |
| | ) United States Magistrate Judge |
| PENNSYLVANIA DEPARTMENT OF | ) Cynthia Reed Eddy |
| CORRECTIONS, et al., | ) |
| | ) |
| Defendants. | ) |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

### I. RECOMMENDATION

It is recommended that, pursuant to the authority granted courts by 28 U.S.C. § 1915(e)(2), the Complaint be dismissed *sua sponte* for failure to state a claim upon which relief can be granted. However, it is recommended that Plaintiff be granted leave to file an Amended Complaint to cure the noted deficiencies.

### II. REPORT

This case began its life on February 10, 2015, when Plaintiff Jason Kokinda ("Kokinda" or "Plaintiff") was an inmate in the custody of the Pennsylvania Department of Corrections ("DOC"). (Civil Action No. 2:15-cv-00179). In that case, Kokinda's request to proceed in forma pauperis was granted and the undersigned ordered Kokinda to pay an initial partial filing fee as required by the Prison Litigation Reform Act, 28 U.S.C. § 1915(b)(1). Kokinda appealed that order to a district judge. The case was assigned to the Honorable Mark R. Hornak and on April 15, 2015, Judge Hornak denied the appeal and administratively closed the case pending the payment of the initial partial filing fee, which had a balance of $77.55. Approximately two

months later, Kokinda filed a "Petition to Overrule Erie R. Co. v. Tompkins Thus Declaring PLRA Unconstitutional On Its Face." Judge Hornak denied the petition on June 23, 2015. By the filing of the instant lawsuit, Kokinda appears to have abandoned his previously filed lawsuit.

On December 7, 2015, Kokinda filed the instant case and noted on the Civil Cover Sheet that this case was related to his case filed at Civil Action No. 15-cv-00179. He apparently has been released from custody and is presently residing in Hammonton, New Jersey.[1] Many, if not all, of the claims raised in this lawsuit mirror the claims he raised in his previous case. The allegations of the complaint pertain to Kokinda's incarceration at three DOC facilities: SCI-Graterford, SCI-Camp Hill, and SCI-Fayette. Named as defendants are the Pennsylvania Department of Corrections ("DOC"); three corporate health care providers: Prison Health Services, Inc.; Corizon Health, Inc.; and Prison Health Services Correctional Care; and twenty individuals, all of whom are either employed or agents of the DOC or the corporate health care providers. The individual defendants are named in their official and individual capacities.

Distilled to its essence, the Complaint recites a lengthy history dating back to July 2, 2010, in which Kokinda alleges that he was denied the "non-standard therapeutic 'No Soy diet'" although "soy allergy was clearly written on the cover of [his] medical record; that he suffered serious gastrointestinal problems as a result of consuming soy products; and that various medical personnel refused to appropriately treat his gastrointestinal problems." Kokinda claims his rights under the First, Eighth and Fourteenth Amendments have been violated and brings this lawsuit under 42 U.S.C. §§ 1983, 1985(3), 1986, and the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12101, et seq. He seeks compensatory damages "jointly and severally"

---

[1] Although the Complaint indicates that Plaintiff "is a resident of Newark, New Castle County, Delaware," the Civil Cover Sheet and return address on his envelopes indicate that his address is "420 13th Street, Hammonton, New Jersey," "Atlantic County."

in the amount of $5,000 per day for each day he failed to receive the "NO SOY" diet; punitive damages "jointly and severally" in the amount of $15,000 per day for each day he failed to receive the "NO SOY" diet; and "declaratory relief stating that 'it is a violation of the Eighth Amendment of the Constitution for the united (sic) States, for prison health care providers to make mere pretences (sic) of addressing serious medical needs such as food allergies. . . . ."

### A. Applicable Legal Principles

Kokinda's Complaint sub judice is filed *in forma pauperis* by Order of the Court. (ECF No. 4.) This Court has a statutory responsibility, given that IFP status, to review the Complaint to determine if it states a valid claim for relief. The Court is required to identify cognizable claims and to *sua sponte* dismiss any claim that is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. § 1915(e)(2)(B).

Moreover, not only is a court permitted to sua sponte dismiss a complaint which fails to state a claim, but it is required to do so by the mandatory language of "the court shall dismiss" utilized by Section 1915(e)(2). In performing a court's mandated function of *sua sponte* reviewing complaints under 28 U.S.C. § 1915(e) to determine if they fail to state a claim upon which relief can be granted, a federal district court applies the same standard as applied to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). *See, e.g., Powell v. Hoover*, 956 F. Supp. 565, 568 (M.D. Pa. 1997) (applying Rule 12(b)(6) standard to claim dismissed under 28 U.S.C. § 1915(e)(2)(B)(ii)).

In reviewing complaints as mandated by 28 U.S.C. § 1915(e) and, consequently, utilizing the standards for a 12(b)(6) motion to dismiss, the complaint must be read in the light most favorable to the plaintiff and all well-pleaded, material allegations of fact in the complaint must

3

be taken as true. *See Estelle v. Gamble*, 429 U.S. 97 (1976). In addition to the complaint, courts may consider matters of public record and other matters of which a court may take judicial notice, court orders, and exhibits attached to the complaint when adjudicating a motion to dismiss under Rule 12(b)(6), and hence, also under the PLRA screening provisions. *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1385 n.2 (3d Cir. 1994).

The question to be resolved is: whether, taking the factual allegations of the complaint, which are not contradicted by exhibits and matters of which judicial notice may be had, and taking all reasonable inferences to be drawn from those contradicted factual allegations of the complaint, are the "factual allegations . . . enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true even if doubtful in fact[.]" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Or put another way, a complaint may be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. Dismissal is proper under Rule 12(b)(6), and hence, under the PLRA screening provisions, where the court determines that the contradicted facts alleged, taken as true and viewed in a light most favorable to the plaintiff, fail to state a claim as a matter of law. *See., e.g., Gould Electronics, Inc. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000).

Because Plaintiff is *pro se,* the court will accord him an even more liberal reading of the complaint, employing less stringent standards than when judging the work product of an attorney. *Haines v. Kerner*, 404 U.S. 519 (1972).

**B.     Discussion**

1. <u>Claims Involving Events Which Occurred at SCI-Graterford and SCI-Camp Hill</u>

As stated above, Kokinda is asserting claims which arose at three different DOC facilities: SCI-Graterford located in Montgomery County, Graterford, Pennsylvania; (Date of Events: July 2, 2010 – July 26, 2010); SCI-Camp Hill located in Cumberland County, Camp Hill, Pennsylvania (Date of Events: July 26, 2010 – October 17, 2010); and SCI-Fayette located in Fayette County, LaBelle, Pennsylvania (Date of Events: October 17, 2010 – September 3, 2014). Only SCI-Fayette is located within the territorial boundaries of the United States District Court for the Western District of Pennsylvania. 28 U.S.C. § 118(c). The other two facilities are located within the territorial boundaries of the Eastern District and Middle District of Pennsylvania, respectively.

The Court finds that Plaintiff's numerous claims do not arise out of the same transaction, occurrence or series of transactions or occurrences and fail to have questions of fact or law common to all Defendants named in the complaint. The Court recommends that Kokinda's claims arising out of events which occurred at SCI-Graterford and SCI-Camp Hill be dismissed with prejudice from this lawsuit. Plaintiff must pursue his many claims which are not time barred and which occurred in the Eastern District of Pennsylvania and the Middle District of Pennsylvania in new and separate civil rights actions filed in those districts in accordance with Rules 8(a) and 20(a) of the Federal Rules of Civil Procedure.

2.     <u>Claims Involving Events Which Arose at SCI-Fayette</u>

According to the Complaint, the date of events giving rise to the SCI-Fayette set of claims arose "on or about October 17, 2000 – September 3, 2014, save several periods during 2011 and 2012 when plaintiff was on Writ at Lehigh County Prison and SCI-Graterford." It

appears that Kokinda was transferred to SCI-Fayette in October 2010. The complaint contends a wide array of claims, including, but not limited to the following:

* Upon his arrival at SCI-Fayette, Nurse Jane Doe #5 did not arrange for him to see a doctor or make arrangements for him to receive a "No Soy diet" despite his medical records indicating that he had a soy allergy.

* The medical staff did not coordinate with "Central Office" to ensure that procedures were in place for inmates with soy allergies.

* Dr. Jane Doe #6 told Kokinda that the "regular diet had no soy" and treated his "symptoms of illness piecemeal . . . thus, showing deliberate indifference to Mr. Kokinda's certainty of injury in consuming soy."

* On March 15, 2012, Kokinda met with PA Michelle Howard Diggs and Jane Doe #7, a dietician, who told him there was no soy in the regular diet. Kokinda alleges that Diggs and the dietician told him this "after conspiring with Christopher H. Oppman." This conspiracy "was done with the evil intent of saving the D.O.C money for a proper diet, at the expense of Mr. Kokinda's health."

* Kokinda thought perhaps there was "soy-contamination from residue on utensils and kitchenware." A kitchen worker told him that only the vegetables were prepared fresh; "leading him to believe, that the food prepared 'too far in advance' and was just harder for him to personally tolerate. Mr. Kokinda still believed from talking to the workers that there was no soy in food. . . ."

* In late February or March of 2014, Kokinda "knew for certain that his 'no soy diet'" issues had merit when another kitchen worker told him that they were forced to cut the eggs with a lot of Tofu that day . . . ."

6

* In October 2014, Kokinda's mother sent him information which indicated that "grits and oatmeal, and just about everything, except fruit" had soy in it.

* Kokinda describes his soy allergy as "quantity based. Meaning that he typically can eat processed foods that have soy used as an additive or emulsifier, and only get gastrointestinal problems. Isolated soy protein, that is used in volume as a filler, triggers the asthmatic / anaphylaxis, rigid muscle knots, facial swelling, and more severe reactions; moments to hours after ingestion."

### a. Eleventh Amendment Immunity

As an initial matter, the Court finds that to the extent that Kokinda names the "Pennsylvania Department of Corrections" as a defendant, his §§ 1983, 1985(3), and 1986 claims must be dismissed sua sponte pursuant to 28 U.S.C. § 1915(e)(2) for failing to state a claim and for seeking damages against a defendant who is immune.

The Eleventh Amendment proscribes actions in the federal courts against, *inter alia,* states and their agencies. *Laskaris v. Thornburgh,* 661 F.2d 23 (3d Cir.1981) (Pennsylvania); *Mt. Healthy City Board of Education v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977) (state agencies). "Unless a State has waived its Eleventh Amendment immunity or Congress has overridden it . . . a State cannot be sued directly in its own name regardless of the relief sought." *Kentucky v. Graham,* 473 U.S. 159, 167 n. 14 (1985) (*citing Alabama v. Pugh,* 438 U.S. 781 (1978)). It is well-settled that the DOC, which administers all state correctional institutions including SCI-Fayette, is an agency or arm of the Commonwealth of Pennsylvania. Thus, the DOC is entitled to the same Eleventh Amendment immunity that the Commonwealth enjoys. *See Steele v. Pennsylvania,* 2009 WL 614800 at *8 (W.D.Pa. Mar. 6, 2009). No exceptions to Eleventh Amendment immunity are applicable here. The Commonwealth of Pennsylvania has

not consented to be sued, *Wilson v. Vaughn,* 1996 WL 426538 at *1 n. 2 (E.D.Pa. July 30, 1996), nor has Congress expressly abrogated Pennsylvania's Eleventh Amendment immunity from civil rights suits for damages. *Smith v. Luciani,* 1998 WL 151803 at *4 (E.D.Pa. March 31, 1998), *aff'd,* 178 F.3d 1280 (3d Cir.1999) (Table).

Similarly, those individual defendants sued in their official capacities are immune from claims for monetary damages and retroactive equitable relief. "[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against an entity." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985)(citing *Brandon v. Holt*, 469 U.S. 464, 471-72 (1985)). The Eleventh Amendment not only bars suits against a state by its own citizens, but also immunizes state defendants sued in their official capacities from liability for damages or equitable relief.

Accordingly, to the extent Kokinda seeks monetary damages against the Pennsylvania Department of Corrections and individuals in their official capacities under 42 U.S.C. §§ 1983, 1985(3), and 1986, it is recommended that the Complaint be dismissed pursuant to 28 U.S.C. § 1915(3)(2)(B)(iii).[2]

---

[2] Moreover, the DOC and the individual defendants in their official capacities are not "persons" for the purposes of § 1983. In *Will v. Michigan Dept. of State Police,* 491 U.S. 58, 70-71 (1989), the Supreme Court held that a state is not "a person" subject to § 1983 liability and that the non-person status extends to "governmental entities that are considered arms of the state for Eleventh Amendment purposes." Because as discussed above, the DOC is an arm of the state, *Will* provides an additional basis for the dismissal of the § l983 claims as to the DOC and the individual defendants acting in their official capacities.

Courts have regularly applied the *Will* doctrine to claims brought pursuant to Sections 1985 and 1986. *See Clark v. Clabaugh,* 20 F.3d 1290, 1295 n. 5 (3d Cir. 1994) (a § 1986 claim is dependent on the existence of a cognizable § 1985 claim).

### b. Americans with Disabilities Act

Kokinda also cites to the ADA, 42 U.S.C. § 12101, et. seq, and claims he is disabled because he has a soy allergy. He alleges that Defendants violated the ADA when they failed to provide him with an adequate soy-free diet.

Pursuant to Title II of the ADA, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. This provision extends to discrimination against prisoners confined in state correctional institutions. *See Penn Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210 (1998). The ADA seeks "to assure even handed treatment and the opportunity for [disabled] individuals to participate in and benefit from programs [receiving financial assistance]." *Southeastern Community College v. Davis*, 442 U.S. 397 (1979). The "even handed treatment" requirement does not, however, impose an affirmative obligation on public entities to expand existing programs but only that disabled individuals receive the same treatment as those who are not disabled.

Assuming for purposes of this report and recommendation only that Kokinda is disabled under the ADA, his allegations that he was unable to procure a soy-free diet, while perhaps raising Eighth Amendment and negligence concerns, do not constitute an ADA violation. *Rashad v. Doughty*, 4 F. App'x 558, 560 (10th Cir. 2001) ("the failure to provide medical treatment to a disabled prisoner, while perhaps raising Eighth Amendment concerns in certain circumstances, does not constitute an ADA violation); *see also Simmons v. Navajo County,* Ariz., 609 F.3d 1101, 1022 (9th Cir. 2010) ("The ADA prohibits discrimination because of disability, not inadequate treatment for the disability."). Nor has Kokinda alleged that Defendants acted

9

with a discriminatory motive in denying him the accommodation he requested. Damages under the ADA are available only if a public official intentionally discriminates because of a disability. *See Garcia v. S.U.N.Y Health Services Center of Brooklyn*, 280 F.3d 98, 111-12 (2d Cir. 2001).

Kokinda is advised that courts, including those in the Third Circuit, have held repeatedly that Title II of the ADA does not apply to actions against defendants in their individual capacities. *Gallagher v. Allegheny County*, No. 09-103, 2011 WL 184128 (W.D.Pa. Jan. 25, 2011).³ "Although the Court of Appeals for the Third Circuit has not addressed the issue, [it] has held that there is no individual liability under Title III, and noted [that this] result comports with decisions of other courts of appeals holding that individuals are not liable under Titles I and II of the ADA, which prohibit discrimination by employers and public entities respectively.'" *Duffy v. Kent County Levy Court,* No. 09-198, 2010 WL 3909089, at *3 n. 2 (D.Del. Sep. 27, 2010) (quoting *Emerson v. Thiel College*, 296 F.3d 184, 189 (3d Cir. 2002) (citations omitted)). The proper defendant in a Title II claim is the public entity itself or an official acting in his or her official capacity. *See Frederick L. v. Department of Public Welfare*, 157 F. Supp.2d 509 (E.D.Pa. 2001) (permitting official capacity suits against individuals under the ADA).

Thus, to the extent Kokinda intends to raise a separate cause of action under the ADA, the Court finds that the Complaint fails to currently state a claim upon which relief can be granted.

---

³ However, individual capacity suits under the provisions of the ADA relating to retaliation / coercion claims are permitted. *See Shotz v. City of Plantation, Fla.,* 344 F.3d 1161, 1186 (11th Cir. 2003) ("the ADA's anti-retaliation provision permits personal capacity suits against individuals.") This provision is not applicable in this lawsuit as Kokinda does not allege that any defendant acted in a retaliatory or coercive manner.

### c. Plaintiff's Claims Under Section 1985(3)

Kokinda also cites to 42 U.S.C. § 1985(3). The Supreme Court of the United States has interpreted § 1985(3) as "requiring that the conspirators' actions be motivated by an intent to deprive their victims of the equal protection of the laws." *Kush v. Rutledge,* 460 U.S. 719, 725. (1983). It is a well-settled constitutional interpretation that "intent to deprive of equal protection, or equal privileges and immunities, means that there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *Id*. at 726. The Court finds that the Complaint fails to state a claim for conspiracy under Section 1985(3) for two reasons.

First, Plaintiff has failed to allege sufficient facts from which one could infer an agreement or understanding among the Defendants to deprive Kokinda of the equal protection of the laws. Second, Kokinda does not allege any actionable form of "invidious discriminatory animus" in his Complaint. Nowhere in the Complaint does Kokinda allege that he was denied a soy diet based on his race or some otherwise class-based, invidiously discriminatory animus. It is not reasonable to infer from the allegations of the Complaint that Defendants were motivated to deprive Kokinda of equal protection / justice under the law because of his race or some otherwise class-based invidiously discriminatory animus. Furthermore, if Kokinda is alleging that Defendants' bad acts were based on Plaintiff's status as a prisoner, he still fails to satisfy this requirement, as it is well established that prisoners are not a protected class. *Abdul-Akbar v. McKelvie,* 239 F.3d 307, 317 (3d Cir. 2001). Accordingly, the Court recommends that Plaintiff's § 1985 claims be dismissed for failure to state a claim.

d. **Claims under 42 U.S.C. § 1986**

The Complaint also states that Kokinda is bringing his claims under 42 U.S.C. § 1986, which provides, *inter alia,* as follows:

> Every person who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses to do so, if such wrongful act committed, shall be liable. . . .

A violation of § 1986 requires an underlying violation of 42 U.S.C. § 1985. Because the Court has recommended that Kokinda's claims under § 1985(3) be dismissed for failure to state a claim upon which relief can be granted, Kokinda cannot establish a violation of § 1986. Therefore, it is recommended that Kokinda's § 1986 claim also be dismissed for failure to state a claim upon which relief can be granted

e. **Leave to Amend**

In the interests of justice to this pro se litigant, *see Haines v. Kerner,* 404 U.S. 519, 520-21 (1972), it is recommended that Kokinda be given leave to file an amended complaint which conforms with the requirements of the Federal Rules of Civil Procedure and cures the deficiencies noted above.

III. **Conclusion**

For the reasons discussed above, it is respectfully recommended that pursuant to 28 U.S.C. § 1915(e)(2) the Complaint be dismissed with prejudice as to those claims which Plaintiff should and can bring in the Eastern and Middle Districts and that the Complaint be dismissed without prejudice as to those claims that arise from events occurring in the Western District. It is further recommended that Plaintiff be granted leave to file an Amended Complaint which cures all deficiencies of pleading noted above.

Pursuant to the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.D.2 of the Local Civil Rules, Plaintiff is allowed fourteen (14) days to file written objections. Failure to timely file objections will constitute a waiver of any appellate rights. *Brightwell v. Lehman*, 637 F.3d 187, 193 n. 7 (3d Cir. 2011).

s/ Cynthia Reed Eddy
Cynthia Reed Eddy
United States Magistrate Judge

Dated: January 13, 2016


cc:   JASON KOKINDA
      420 13th Street
      Hammonton, NJ 08037