# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

Jason Kokinda
Plaintiff

vs.  Case No. 2:15-cv-1593

Pennsylvania Department of Corrections
Christopher H. Oppman, MBA, MHA
Michele Howard Diggs
(See full list of defendants on next pgs.)
Defendant(s)

**DEFENDANTS**

1. Pennsylvania Department of Corrections
   1920 Technology Parkway
   Mechanicsburg, PA 17050
   (717)-728-2573

2. Michele Howard Diggs
   (official/personal capacity)
   50 Overlook Drive
   LaBelle, PA 15450-1050
   (724)-364-2200

3. Christopher H. Oppman, MBA, MHA
   (official/personal capacity)
   1920 Technology Parkway
   Mechanicsburg, PA 17050
   (717)-728-4122

4. Prison Health Services, Inc.
   (official/personal capacity)
   Corporate Office
   103 Powell Court
   Brentwood, TN 37027
   (800)-729-0069

5. Patricia Stover
   (official/personal capacity)
   1920 Technology Parkway
   Mechanicsburg, PA 17050
   (717)-728-4111

6. Corizon Health, Inc.
   (official/personal capacity)
   Corporate Office
   103 Powell Court
   Brentwood, TN 37027
   (800)-729-0069

7. Prison Health Services Correctional Care, Inc.
   (official/personal capacity)
   Corporate Office
   103 Powell Court
   Brentwood, TN 37027
   (800)-729-0069

8. Rhonda House
   (official/personal capacity)
   50 Overlook Drive
   LaBelle, PA 15450-1050
   (724)-364-2200

9. Shawn Kephart/DSCS
    (official/personal capacity)
    2500 Lisburn Road
    Camp Hill, PA 17001-8837
    (717)-737-4531

10. Jane Doe#2/Doctor
    (official/personal capacity)
    SCI-Graterford
    P.O. Box 246, Route 29
    Graterford, PA 19426-0246
    (610)-489-4151

11. Jane Doe#4/Doctor
    (official/personal capacity)
    2500 Lisburn Road
    Camp Hill, PA 17001-8837
    (717)-737-4531

12. Jane Doe#6/Dietician
    (official/personal capacity)
    50 Overlook Drive
    LaBelle, PA 15450-1050
    (724)-364-2200

13. John Doe#2/CHCA
    (official/personal capacity)
    SCI-Graterford
    P.O. Box 246, Route 29
    Graterford, PA 19426-0246
    (610)-489-4151

14. John Doe#4/(acting CHCA at time)
    (official/personal capacity)
    2500 Lisburn Road
    Camp Hill, PA 17001-8837
    (717)-737-4531

15. Susan Berrier/(acting CHCA at time)
    (official/personal capacity)
    50 Overlook Drive
    LaBelle, PA 15450-1050
    (724)-364-2200

16. Jane Doe#1/Nurse
    (official/personal capacity)
    SCI-Graterford
    P.O. Box 246, Route 29
    Graterford, PA 19426-0246
    (610)-489-4151

17. Jane Doe#3/Nurse
    (official/personal capacity)
    2500 Lisburn Road
    Camp Hill, PA 17001-8837
    (717)-737-4531

18. Jane Doe#5/Nurse
    (official/personal capacity)
    50 Overlook Drive
    LaBelle, PA 15450-1050
    (724)-364-2200

19. John Doe#1/DSCS
    (official/personal capacity)
    SCI-Graterford
    P.O. Box 246, Route 29
    Graterford, PA 19426-0246
    (610)-489-4151

20. John Doe#3/(acting DSCS at time)
    (official/personal capacity)
    2500 Lisburn Road
    Camp Hill, PA 17001-8837
    (717)-737-4531

21. John Doe#5/(acting DSCS at time)
    (official/personal capacity)
    50 Overlook Drive
    LaBelle, PA 15450-1050
    (724)-364-2200

22. Michael J. Herbik (Medical Director)
    (official/personal capacity)
    50 Overlook Drive
    LaBelle, PA 15450-1050
    (724)-364-2200

23. John Doe#7 (Medical Director)
    (official/personal capacity)
    2500 Lisburn Road
    Camp Hill, PA 17001-8837
    (717)-737-4531

24. John Doe#6 (Medical Director)
    (official/personal capacity)
    P.O. Box 246, Route 29
    Graterford, PA 19426-0246
    (610)-489-4151

## COMPLAINT

Plaintiff is a resident of Newark, New Castle County, Delaware, and a citizen of the united States; and brings the following action against the above named and identified defendants on the following cause of action:

## JURISDICTION

I. This court has jurisdiction over this matter pursuant to First, Eighth, and Fourteenth Amendments of the Constitution for the united States; 42 U.S.C. §§ 1983, 1985(3), 1986, and the Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. §§ 12101et seq.

II. Events at SCI-Graterford

A. Date of events: On or about July 2, 2010 - about July 26, 2010.

B. Place of events: SCI-Graterford

C. Persons involved:

1. Jane Doe#l Nurse at SCI-Graterford wrote down in the Medical File, on or about June 2, 2010, at reception of Mr. Kokinda from Lehigh County Prison, that Mr. Kokinda has a Soy allergy. She did not, however, arrange for Mr. Kokinda to see a doctor for, (or to otherwise provide him with,) the non-standard therapeutic "No Soy" diet he required. Thus showing, deliberate indifference to Mr. Kokinda's certainty of injury in consuming soy; in violation of the Eighth and Fourteenth Amendments of the Constitution for the united States.

2. Jane Doe#2 doctor failed thereafter, during follow-up intake procedures, over the next two weeks, to at all inquire into the soy allergy that was clearly written on the cover of Mr. Kokinda's medical record. Thus showing, deliberate indifference to Mr. Kokinda's certainty of injury in consuming soy; in violation of the Eighth and Fourteenth Amendments of the Constitution for the united States.

3. John Doe#l (acting Deputy Superintendent for Centralized Services (hereinafter DSCS) at time) had failed to coordinate with Christopher H. Oppman and Patricia Stover from Central Office, to ensure that procedures were in place for persons with very common soy allergies, to obtain special soy-free diets, immediately, upon reception. Thus, creating supervisor liability, for lack of implementing SCI-Graterford policy or custom to prevent obvious allergy health risks.

4. John Doe#2 (acting Corrections Health Care Administrator (hereinafter CHCA) at time) and John Doe#6 (Medical Director) had failed to coordinate with SCI-Graterford DSCS John Doe#1, and Christopher H. Oppman and Patricia Stover from Central Office, to ensure that procedures were in place for persons with very common soy allergies, to obtain special soy-free diets, immediately, upon reception. Thus, creating supervisor liability, for lack of implementing SCI-Graterford policy or custom to prevent obvious allergy health risks.

Ill. Events at SCI-Camp Hill

A. Date of events: On or about July 26, 2010- about October 17, 2010.

B. Place of events: SCI-Camp Hill

C. Persons involved:

5. Jane Doe#3 Nurse at SCI-Graterford was in possession of the Medical File at reception of Mr. Kokinda that he has a Soy allergy. She did not, however, arrange for Mr. Kokinda to see a doctor for, (or to otherwise provide him with,) the non-standard therapeutic "No Soy" diet he required. Thus showing, deliberate indifference to Mr. Kokinda's certainty of injury in consuming soy; in violation of the Eighth and Fourteenth Amendments of the Constitution for the united States.

6. Jane Doe#4 doctor failed thereafter, during follow-up intake procedures to at all inquire into the soy allergy that was clearly written on the cover of Mr. Kokinda's medical record. Thus showing, deliberate indifference to Mr. Kokinda's certainty of injury in consuming soy; in violation of the Eighth and Fourteenth Amendments of the Constitution for the united States.

7. Shawn Kephart, or John Doe#3 (acting DSCS at time) had failed to coordinate with Christopher H. Oppman and Patricia Stover from Central Office, to ensure that procedures were in place for persons with very common soy allergies, to obtain special soy-free diets, immediately, upon reception. Thus creating supervisor liability for lack of implementing SCI-Camp Hill policy or custom to prevent obvious allergy health risks.

8. John Doe#4 (acting CHCA at time) and John Doe#7 (Medical Director) had failed to coordinate with SCI-Camp Hill , DSCS Shawn Kephart or John Doe#3, and Christopher H. Oppman and Patricia Stover from Central Office, to ensure that procedures were in place for persons with very common soy allergies, to obtain special soy-free diets, immediately, upon reception. Thus, creating supervisor liability, for lack of implementing SCI-Camp Hill policy or custom to prevent obvious allergy health risks.

IV.            Events at SCI-Fayette

A. Date of events: On or about October 17, 2010 - September 3, 2014, save several periods during 2011 and 2012 when plaintiff was on Writ at Lehigh County Prison and SCI-Graterford.

B. Place of events: SCI-Fayette

C. Persons involved:

9. Jane Doe#5 Nurse at SCI-Graterford was in possession of the Medical File at reception of Mr. Kokinda that he has a Soy allergy. She did not, however, arrange for Mr. Kokinda to see a doctor for, (or to otherwise provide him with,) the non-standard therapeutic "No Soy" diet he required. Thus showing, deliberate indifference to Mr. Kokinda's certainty of injury in consuming soy; in violation of the Eighth and Fourteenth Amendments of the Constitution for the united States.

10.         John Doe#5 (acting DSCS at time) had failed to coordinate with Christopher H. Oppman and Patricia Stover from Central Office, to ensure that procedures were in place for persons with very common soy allergies, to obtain special soy-free diets, immediately, upon reception. Thus. creating supervisor liability for lack of implementing SCI-Fayette policy or custom to prevent obvious allergy health risks.

11.         Susan Berrier (acting CHCA at time) and Michael J. Herbik (Medical Director) had failed to coordinate with SCI-Fayette DSCS John Doe#5, and Christopher H. Oppman and Patricia Stover from Central Office, to ensure that procedures were in place for persons with very common soy allergies, to obtain special soy-free diets, immediately, upon reception. Thus, creating supervisor liability, for lack of implementing SCI-Fayette policy or custom to prevent obvious allergy health risks.

12.         Mr. Kokinda submitted a Sick Call slip to Medical on or about late November or early December of 2011; complaining of chronic diarrhea from prison food; possibly from soy. Jane Doe#6 doctor or PA, said that the regular diet had no soy, and that they would only treat the symptoms of illness piecemeal. Thus showing, deliberate indifference to Mr. Kokinda's certainty of injury in consuming soy; in violation of the Eighth and Fourteenth Amendments of the Constitution for the united States; and First Amendment, by covering up material facts that formed access to court clause violation.

13.         Mr. Kokinda refused to deal with his symptoms in such an irrational way. They wanted

to charge him big money for the same piecemeal ineffective remedies that he could purchase at a lower cost from commissary. That was their idea of medical care, making pretences of treating the symptoms, whilst avoiding any genuine objective to remedy the cause.

14. Mr. Kokinda then went on Writ to Lehigh County Prison for approximately one month, from May 26, 2011 through June 5, 2011; where he was provided with a so-called "No Soy" Diet, that was not free of soy, but for whatever reason manifested less of the severe diarrhea symptoms.

15. Mr. Kokinda again went on Writ again to SCI-Graterford and Lehigh County Prison several more times: About December 10, 2011to February 16, 2012, and April 12, 2012 to May 5, 2012, and again from September 2, 2012 to about October 25, 2012.

16. After returning to SCI-Fayette, from first Writ to Graterford, on or about February 16, 2012, Mr. Kokinda submitted a Sick-Call slip to Medical on March 11, 2012, complaining of his symptoms and how he did not get the severe diarrhea while on Writ.

17. PA Michele Howard Diggs told Mr. Kokinda that there was no soy in the regular diet, only the alternative. She arranged for Mr. Kokinda to speak with Jane Doe#7, Dietician, in a subsequent visit to confirm this.

18. Mr. Kokinda met with PA Michele Howard Jan Doe#6 Dietician on March 15, 2012. They both told him that there was no soy in the diet, and that there was therefore nothing they could do for him. Apparent, from the medical records; this was after conspiring with Susan Barrier, and Christopher H. Oppman, (whom they refer to as Mr. Christopher therein).

19. They had apparently truncated the scope of the issue to whether the SCI-Fayette meatloaf had soy in it; which was denied, because the packaging states that the meat used is 100% beef. Refusing to consider as a whole; whether there was soy in any of the food, or whether Mr. Kokinda had a bona fide food allergy/intolerance of any sort that required more careful scrutiny to determine proper diet for his health needs.

20. The conspiracy between Jane Doe#6 Dietician, PA Michele Howard Diggs, Susan Barrier, and Christopher H. Oppman, was done with the evil intent of saving the D.O.C. money for a proper diet, at the expense of the *guilty but mentally ill* nobody, Mr. Kokinda's, health. Because, as medical professionals and persons in charge of food services, they had to have known that there was high soy content in the prison food that they were purchasing and feeding inmates. Thus showing, deliberate indifference to Mr. Kokinda's certainty of injury in consuming soy; in violation of the Eighth and Fourteenth Amendments of the Constitution for the united States; and First Amendment, by covering up material facts that formed access to court clause violation.

21. Mr. Kokinda had thereafter thought perhaps it was merely Soy cross-contamination, from residue on utensils and kitchenware -- that was also in contact with the alternate soy diet. He

therefore requested a transfer to SCI-Somerset, where he heard the kitchens were run better, because of culinary program. An issue he raised in his March 16, 2012, grievance #404930. A grievance whose exhaustion was obstructed in violation of the First and Fourteenth Amendments of the Constitution for the united States, by co-conspirator Grievance Coordinator Rhonda House failing to send him a response to appeal it. She conspired with defendants to obstruct litigation of soy contamination issue raised therein.

22.	Mr. Kokinda was then told by a kitchen worker that only the vegetables were prepared fresh; leading him to believe, that the food was prepared 'too far in advance' and was just harder for him personally to tolerate the bacterial growths produced therein; thinking that tolerance would develop overtime.

23.	Mr. Kokinda still believed from talking to the workers that there was no soy in food, and that it was 100% beef or brandname foods, as their independent affirmation of what Medical had told him; based on the labels they read.

24.	Mr. Kokinda requested that his mother, Jill Wong, find a place that tests foods, that he could send out samples to see if there was either bacteria or soy, or something else in the food, causing sickness. But she could not send him the bags the company required (pursuant to prison policy restrictions). And his mother soon became uncooperative; reasoning that the samples would get corrupted and test inconclusive, if you did not send them directly to the testing company, sealed in their special bags.

25.	Mr. Kokinda often avoided the processed meats, and did notice that his chronic diarrhea was less frequent. But, he got symptoms from hot cereals and scrambled eggs, and just about everything; and thought that those items could not have soy in them; cause soy was only found in traces, except when used as meat filler, he believed.

26.	Mr. Kokinda had begun to speculate that the white residue on the trays, from the poor shape the tray cleaning machine was in, might be the cause of his chronic diarrhea and gastrointestinal problems. Until about November of 2013, when the new system was installed, with new blue trays -- having little effect in resolving issues.

27.	Mr. Kokinda similarly thought that the reports of bad water from the active fly-ash dumping right next to the prison, could also be the cause of his chronic diarrhea, and gastrointestinal problems.

28.	Until about late February or March of 2014, Mr. Kokinda, knew for certain that his "no soy diet" issues had merit, when another kitchen worker told him that they were forced to cut the eggs with a lot of Tofu that day, which gave the eggs a translucent, bubbly, jelly-like appearance. Which he had noticed occurring in the eggs to a lesser degree all of the time, explaining his severe diarrhea every time he ate them.

29.        Mr. Kokinda was hoping that reverse psychology would get to the truth of the matter. He therefore wrote to dietary, feigning as though he liked the soy in the eggs, and as if he wondered whether the health benefits were greater than with regular eggs or regular diet. The dietician wrote back, again denying, that tofu was mixed with eggs, or that soy was in the beef or chicken.

30.        This made it certain to Mr. Kokinda that the Dietician and Medical were lying to him, and that the substantive cause of his chronic diarrhea and gastrointestinal sickness was the high volume of soy in the regular prison diet.

31.        Another inmate had also told Mr. Kokinda of McDonald's being sued for advertising hamburgers as 100% beef, when they had soy fillers in them. This seemed to explain the labeling that other inmates had confirmed to him concerning the food, that had theretofore delayed him in uncovering merit -- for the filing of grievances and/or lawsuits -- to make immediate remedy. (100% beef meaning only that there was no pork, or chicken, or other types of meat in it).

32.        Mr. Kokinda did not realize that the grits and oatmeal, and just about everything, except the fruit, had soy in it, and was causing side-effects he had previously attributed to anti-psychotic medications; until his mother sent him information from Weston A. Price Foundation, on or about October 27, 2014.

33.        It was not until his release from prison that he was able to eat a normal diet, as a control point for accurate testing. He then discovered how the soy in particular was effecting him; without consideration of the effects from the high levels of sodium, preservatives, and bacteria, contaminants, and salt peter in the prison food.

34.        Immediate ingestion of spring rolls that had "soy powder" as a substantive ingredient, hours later gave Mr. Kokinda the painful rigid muscle knots and difficulty breathing, that he had once blamed on hypertension and/or anti-psychotic medication being in his body. Higher levels of soy produce gastrointentinal problems of acid reflux, indigestion, and diarrhea. And long-term consumption of soy is obviously what led to him developing severe stomach ulcers at SCI-Fayette; for which he was prescribed Zantac.

35.        Mr. Kokinda's soy allergy is quantity based. Meaning that he typically can eat processed foods that have soy used as an additive or emulsifier, and only get gastrointestinal problems.

36.        Isolated soy protein, that is used in volume as a filler, triggers the asthmatic/anaphylaxis, rigid muscle knots, facial swelling, and more severe reactions; moments to hours after ingestion.

37.        Any amount of soy or soybean oil can cause gastrointestinal problems and exacerbation of Obsessive Compulsive Disorder, minutes to hours after ingestion; leading to severe psychological trauma; in violation of the Eighth and Fourteenth Amendments of the Constitution for the united States; and the Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. §§ 12101 et seq.

38.        Asthmatic/anaphylaxis problems are more noticeable when exercising or walking; and have resulted in labored breathing, rather than fatal narrowing of the airways.

39.        Mr. Kokinda has noticed that even consumption of foods cooked in soybean oil produces anaphylaxis, the noticeable swelling of his tonsils and throat, that is most apparent at night; at times causing sleep apnea that can make it difficult for him to even go to sleep at all.

40.        This may be that he is also allergic to the oil, or that the oil is often contaminated with concentrated soy proteins that are documented to be particularly high in prison diets at 53 to 72 soy protein grams per day.

41.        The prisons use Textured Vegetable Proteins and ARCON® concentrated soy-protein in EVERYTHING! Soups, gravies, sauces, baked goods, and anything at all.
V. Issues relevant to all said events at prisons:

42.        Forcing Mr. Kokinda to rely on a commissary diet was an extremely cruel and unusual punishment, which also violated his equal protection rights, as a form of invidious discrimination against those with food allergies; forcing them to purchase and live on overpriced commissary foods loaded with low vitamin content, mercury, unhealthy preservatives, sugar, artificial colors and sweeteners, high sodium content, and other chemicals. The prison is required by Eighth Amendment of U.S. Constitution to provide a healthy balanced diet to all inmates.

43.        Issues collateral to the denial of "no soy" diet are severable, even though the effects of denying the diet had contributed, they must be raised in separate lawsuits, involving separate events and legal theories that muddle the instant lawsuit, involving parties tangentially related to the instant action.

44.        The remaining symptoms of Mr. Kokinda's soy allergy and intolerance are as follows: hypothyroidism (causing lethargy, weight gain, and feeling cold all the time [from high goitrogen levels in soy)); brain fog; hormonal imbalances (due to high phytoestrogen content of soy); anaphylactic/asthmatic symptoms (with possible facial swelling); constipation; alternating with chronic diarrhea (if higher levels of soy are consumed); and exacerbation of Obsessive Compulsive Disorder symptoms, from inducing stress on the body.

45.        Mr. Kokinda also suffers from indigestion, gas, gas pains, heartburn, severe acid reflux, which leads to development of ulcers and risk of Barret's syndrome (that runs high risk in his family) and cancer; and malnutrition, such as iron and zinc deficiencies leading to hair loss and brittle/grooved nails.

46.        Mr. Kokinda did not know that there was soy in the prison diets, because the soy used is an unfermented chemically processed isolated soy protein that is both tasteless and colorless, and wholly invisible when mixed into the processed and prepared foods.

47.     Mr. Kokinda ate primarily unprocessed, whole, organic, and natural foods, before (and after his incarceration); and had made Medical at SCI-Fayette aware of this fact; when notifying them of his gastrointestinal problems after consumption of meals.

48.     The events subsequent to Mr. Kokinda's transfer to SCI-Green, involve more complex litigation that is only tangentially related to the instant lawsuit. He was denied "No Soy" Diet by other doctors, and other parties, acting in concert to violate many forms of civil rights under the color of law. And is unable to name said parties, due to ongoing extortions and cover-ups.

49.     The conduct of all of the defendants working at the prisons, indicates that Corizon Medical, Inc. and the companies it was formed from in 2011, (Prison Health Services, Inc. and Prison Health Services Correctional Health Care,} are liable for damages under supervisor liability; for lack of policy to ensure that prisoners with food allergies/intolerances are immediately accommodated with a proper diet, at reception; and/or tested and diagnosed properly. Which also proves a lack of proper training, in absence of policy, to simply follow fundamental and scientific diagnostic methods.

50.     Christopher H. Oppman, MBA, is also responsible under supervisor liability, as the Director in the Administrative D.O.C. department responsible for food service operations and medical care throughout the state, and directly personally involved conspirator of medical records.

51.     Patricia Stover, is also responsible under supervisor liability, as the Director- in the Administrative D.O.C. department - responsible for implementing and maintaining departmental policies.

52.     The current custom in place, is a threshold determination of severity, apparently based on whether the prisoner had died or nearly died from the most severe allergic anaphylaxis, before remedy is given. Any other way, the Medical will simply lie and say the allergens do not exist, or that you do not have a bona fide allergy; or that it is only an intolerance, which is not severe enough to obtain diet.

53.     . The defendants lied to Mr. Kokinda, truncating the scope and standard of review on the issue, to mislead him into believing that the prison regular diet had no soy to save a few bucks at the expense of his health; knowing that the regular prison diet is extremely high in soy. Even if it cost him his life, they'd get a bonus by keeping his name in the computer and collecting federally subsidized funds long after he

expired; as Mr. Kokinda had witnessed them doing to another inmate -the now deceased, David McClelland Sr.

54.     Corizon Medical, Inc. and its PHS precursors, have a notorious reputation of making piecemeal pretences of minimizing symptoms; while failing to take any comprehensive, scientific, holistic, or objective approach to resolving the root cause of any health issue. This is an unconstitutional

custom, implemented in violation of the Eighth and Fourteenth Amendments of the Constitution for the united States.

55.     All of the defendants named in this Complaint were under contract with Corizon and PHS or employed by the D.O.C., and were required to provide or assist in providing proper medical care in the events of the instant complaint.

56.     Corizon Medical, Inc., and its PHS precursors, are a governmental entity, and were so at the time of all events, and thus qualify as "persons" under 28 U.S.C. § 1983.

57.     None of the defendants even filled out the D.O.C. 13.2.1, Access to Health Care Manual, Section 16 - Quality Improvement Plan - Chapter 19 Attachment 19-A form, to take any preliminary steps in determining scientifically whether Mr. Kokinda's symptoms met the parameters that required a non- standard therapeutic diet; nor did they do any allergy testing at all, or serious inquiry into soy content of prison foods.

58.     The defendants all acted with "deliberate indifference" to prisoner health needs, and Mr. Kokinda's health needs in particular, in regard to the provision of special diets for those with allergens; because it is cheaper to deal with piecemeal litigation -- collateral to the wholesale denial of adequate medical care -- than it is to simply have a policy in place, or to fairly provide, such meals to people with allergies as needed or upon reception.

59.     All of the defendants acted under color of state law with nefarious intents in violating Mr. Kokinda's civil rights; and put the unconstitutional policy of generating profits at the expense of prisoners' health and lives, above any sense of morality or conscience. Under the theory that, what's good for the goose is what's good for the gander; knowing that they would be reprimanded or fired for going against any cost-saving directives imposed off-the-record by superiors.

60.     The Department of Corrections does not even list a "No Soy" diet as one of its standard therapeutic diets; (even though the Food Allergen Labeling and Consumer Protection Act of 2004 (FALCPA) recognizes soy as one of the eight most common food allergens, along with milk, wheat, eggs, fish, peanuts, tree nuts and crustacean shellfish); showing a fundamental lack of concern for prisoner health, and making manifest the systematic abuse of the unfortunate by those in power.

61.     Mr. Kokinda was denied the soy-free diet in violation of the ADA, in significant part due to his guilty but mentally ill status and the powerlessness the officials perceived that they could easily walk all over Mr. Kokinda as someone feebleminded, and easily discredited.

62.     Mr. Kokinda became aware at SCI-Greene that other prisoners were being provided with a soy-free diet and that it did exist, and that there was apparently soy in the regular diet, not just the alternative diet as the medical defendants claimed.

63.     There was absolutely no medical discretion here. The officials simply conspired and denied that there was any soy in the diet. They did nothing to address Mr. Kokinda's self-diagnosed symptom of soy allergy that would have uncovered a full range of symptoms he was uncertain of. Taking the over-the-counter Mylanta and diarrhea remedies did nothing to mitigate the allergy induced symptoms.

64.     Mr. Kokinda went to a Allergy specialist and tested positive with the most scientifically reliable form of testing, a skin-prick IgE response test. These tests only give false positives if a person is allergic to a class of foods, rather than one in particular.

65.     The skin-prick test does not require consumption of the allergen. It instead observes the histimine IgE reaction occurring in the skin.

66.     Mr. Kokinda was not able to obtain valid results in an IgG soy and wide spectrum (IgE general level) blood test, with admission from the doctor, Dr. Gardner, that she did not advise Mr. Kokinda of the need to be ingesting soy for several months before testing.

67.     Mr. Kokinda proved with elimination challenge that eliminating soy from his diet frees him from all of the harmful effects attributed to soy allergy, including the most profound symptoms of: anaphylaxis, chronic severe diarrhea, and fibromyalgia induced muscle knots and stiffness.

V. Plaintiff demands all of the following relief:

1. Compensatory damages jointly and severally against PHS, Corizon Medical, Inc., Christopher H. Oppman, Patricia Stover, Michele Howard Diggs, Pennsylvania Department of Corrections, Michael J. Herbik, Rhonda House, Susan Berrier, Shawn Kephart, John Doe#l, John Doe#2, John Doe#3, John Doe#4, John Doe#S, John Doe#6, John Doe#7, Jane Doe#l, Jane Doe#2, Jane Doe#3, Jane Doe#4, Jane Doe#S, and Jane Doe#6, in the amount of FIVE THOUSAND ($5,000) DOLLARS per day, for each day that Mr. Kokinda failed to receive "NO SOY" Diet, following July 2, 2010, intake interview at SCI-Graterford, counting each day therefrom, until September 3, 2014 transfer to SCI-Greene; save for the approximately 60 days that Mr. Kokinda was on Writ and in custody of Lehigh County Prison during that time period.

2. Punitive damages jointly and severally against PHS, Corizon Medical, Inc., Christopher H. Oppman, Patricia Stover, Michele Howard Diggs, Pennsylvania Department of Corrections, Michael J. Herbik, Rhonda House, Susan Berrier, Shawn Kephart, John Doe#l, John Doe#2, John Doe#3, John Doe#4, John Doe#S, John Doe#6, John Doe#7, Jane Doe#l, Jane Doe#2, Jane Doe#3, Jane Doe#4, Jane Doe#S, and

Jane Doe#6, in the amount of FIFTEEN THOUSAND ($5,000) DOLLARS per day, for each day that Mr. Kokinda failed to receive "NO SOY" Diet, following July 2, 2010, intake interview at SCI-Graterford, counting each day therefrom, until September 3, 2014 transfer to SCI-Greene; save for the approximately 60 days that Mr. Kokinda was on Writ and in custody of Lehigh County Prison during that time period.

3. Declaratory relief stating that "it is a violation of the Eighth Amendment of the Constitution for the united States, for prison health care providers to make mere pretences of addressing serious medical needs such as food allergies, or feigning negligence; for doing so does not render the 'deliberate indifference' as 'mere negligence.' For, even 'ordinary negligence' requires serious attempts to render adequate care; failing only because there is a fundamental breech in professional skill or competence alone being the proximate cause of malpractice injury. (Such as a doctor leaving sponge in patient during otherwise successful surgery)."

**ADDITIONAL INFO**

VI.	There is no additional information.

The Plaintiff, Jason Kokinda, demands a jury trial on all claims asserted in this civil rights action.

I declare under penalty of perjury that all of the foregoing is true and correct to the best of my personal knowledge and belief.

_Jason Kokinda__ cu7-308_	_2-23-18_

Signature of pro se Plaintiff	Date

## SWORN CERTIFICATION

I, Jason Kokinda, certify under penalty of perjury that the facts set forth in the foregoing documents are true and correct to the best of my personal knowledge and belief.

Date: February 23rd, 2018          /s/ _____

                                                    Pro Se Petitioner

## PROOF OF SERVICE

Date: February 23rd, 2018

I, Jason Kokinda, hereby certify under penalty of perjury that this day I am serving the foregoing documents in the manner listed below, which service satisfies the civil rules of procedure applicable to a civil rights action under 42 U.S.C.S. §§ 1983, 1985(3), and 1986.

Service by ___Online/ECF___ Mail to all of the following parties:

Plaintiff has not able to serve any documents on the Office of the Attorney General, since they began extorting him and criminalizing his filings in 2015. Because the criminalization of filings, implicates Fifth Amendment Rights; plaintiff is not able to seek appropriate redress in the Courts on this issue. The OAG attempts to fabricate evidence through discussion of malicious claims, as if they have merit. Seeking qualified language on words in filings to pursue irrational legal theories. The indelible record of corruption is their ultimate undoing.

Date: February 23rd, 2018

                                      /s/ _____

Jason Kokinda, AR, Nemesis Paralegal Services, 38 N. Main St., #1028, Waterbury, VT 05676, (802)-391-0921 (jkoda@jkoda.org)